**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **CRIMINAL NO.   H-4:17-cr-00651-9** |
| | § | |
| **GRISEL SALAS,** | § | |
| | § | |
| Defendant. | § | |

**PLEA AGREEMENT**

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Adam Laurence Goldman, Assistant United States Attorney, and the defendant, Grisel Salas ("Defendant"), and Defendant's counsel, pursuant to Rule **11(c)(1)(B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

**Defendant's Agreement**

1. Defendant agrees to plead guilty to Count 18 of the Indictment. Count 18 charges Defendant with Conspiracy to Bring In, Transport, Move, Conceal, Harbor, and Shield From Detection Illegal Aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii), (iii) and (v)(I), and 1324(a)(1)(B)(i), and (iii). Defendant, by entering this plea, agrees that she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

**Punishment Range**

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1324(a)(1)(A)(ii), (iii) and (v)(I), and 1324(a)(1)(B)(i), and (iii), is imprisonment of not more than 10 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of **up to 3** years. *See* Title 18, United States

Code, sections 3559(a)(3) and 3583(b)(2).   Defendant acknowledges and understands that if she should violate the conditions of any period of supervised release which may be imposed as part of her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.   *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3).   Defendant understands that she cannot have the imposition or execution of the sentence suspended, nor is she eligible for parole.

### Mandatory Special Assessment

3.   Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.   In addition, pursuant to Title 18, United States Code, section 3014, Defendant will pay to the Clerk of the United States District Court an additional special assessment in the amount of five thousand dollars ($5000.00) if it is determined the defendant is not indigent.   The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4.   Defendant recognizes that pleading guilty may have consequences with respect to her immigration status.   Defendant understands that if she is not a citizen of the United States, by pleading guilty she may be removed from the United States, denied citizenship, and denied admission to the United States in the future.   Defendant understands that if she is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States.   Defendant's

2

attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that she wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, not oppose the forfeiture of assets contemplated in paragraphs 17-20 and 22-25 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to sex trafficking and illegal immigration. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

3

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)     Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in her possession or under her control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw her plea.

### Waiver of Appeal and Collateral Review

7.   Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.  Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.  Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.  In the event Defendant files a notice of

4

appeal following the imposition of the sentence or later collaterally attacks her conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.   In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.   Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that she may have received from her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce her guilty plea, and is not binding on the United States, the Probation Office or the Court.   The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.   *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9.   Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10.   The United States agrees to each of the following:

(a)      If Defendant pleads guilty to Count 18 of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment as well as the counts pending against this Defendant is case number H-4:17-cr-00725 at the time of sentencing;

(b)      If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level

5

prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

11. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment.  This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.  It does not bind any other United States Attorney's Office.  The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing.  Specifically, the United States reserves the right:

(a)    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)    to set forth or dispute sentencing factors or facts material to sentencing;

(c)    to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)    to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)    to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13.   Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a).   Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.   Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.   If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

14.   Defendant understands that by entering into this agreement, she surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)      If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)      At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and her attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on her own behalf.   If the witnesses for Defendant would not appear

7

voluntarily, she could require their attendance through the subpoena power of the court; and

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.  However, if Defendant desired to do so, she could testify on her own behalf.

### Factual Basis for Guilty Plea

15.  Defendant is pleading guilty because she is in fact guilty of the charges contained in Count 18 of the indictment.   If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.   The following facts, among others would be offered to establish Defendant's guilt:[1]

### A.     Overview of the Conspiracy

The Southwest Cholos ("SWC") is a criminal organization based in Southwest Houston. In addition to its members, SWC also has associates operating throughout Texas, Mexico, and Central America who act in furtherance of its criminal scheme.

SWC members and associates are engaged in a variety of criminal conduct, including, but not limited to, the smuggling of illegal aliens into and within the United States in exchange for a fee.

Brenda Alvarez-Sanchez is a native, citizen and national of Honduras.   Chuanping Chen and Aihui Lin are natives and citizens of the People's Republic of China.   Wilvin Francisco is a native and citizen of the Dominican Republic.   Edgar Ernesto Martinez-Hercules, Elbin Jonathan Bonilla-Fajardo, Angel Balmore Quijada-Flores, Vilma Aracely Rivera-Guevara, and Jose Vidal

---

[1] Although Defendant does not contest that the United States could prove all of the facts contained in this paragraph beyond a reasonable doubt, she only has knowledge of the facts contained in subsections C and D of this paragraph.

Zelaya-Mejia are natives and citizens of El Salvador.   Heladio Santiago-Bautista is a native and citizen of Mexico.   All are aliens who entered the United States at a place other than a designated port of entry without being inspected by an immigration officer.   In addition, all paid a fee to human smuggling organizations in order to be smuggled into the United States without permission and then transported to specific locations in the United States.   SWC was a part of and worked with these human smuggling organizations to smuggle, transport, and harbor the aliens.

SWC members and associates assisted these aliens in crossing the United States-Mexico international border without inspection at a place other than a designated port of entry.   SWC members and associates also transported these aliens to one of many "stash houses" located in the Rio Grande Valley.   SWC members and associates also concealed, harbored, and shielded from detection these aliens at a stash house, and transported them between stash houses.   SWC members and associates also transported or attempted to transport these aliens through and past United States Border Patrol checkpoints, including checkpoints located in Sarita, Texas and Falfurrias, Texas.   SWC members and associates also transported or attempted to transport these aliens to an area north of the United States Border Patrol checkpoint to another stash house located in or near Houston, Texas.   SWC members and associates also concealed, harbored, and shielded from detection, or attempted to conceal, harbor and shield from detection, these aliens at a stash house located in or near Houston, Texas.

In exchange for these illicit services, SWC members and associates received a fee from the aliens, directly or through the larger human smuggling organization.   The fee varied by alien. Some aliens paid prior to passage into the United States.   Some aliens paid a portion of their earnings in the United States after they illegally entered.   SWC members and associates received

9

a portion of the fee in exchange for their smuggling services.

**B.    The April, 2017 Smuggling**

On April 12, 2017, co-defendants Melisa Dominguez ("Missy") and Maria Angelica

Moreno-Reyna ("Patty") discussed over a court authorized wire intercept having Brenda Alvarez

Sanchez ("Brenda") smuggled into the United Sates.  Patty then discussed the matter with co-

defendant William Lopez ("William"), who, at the time resided in Mexico, and, at the time, had

Brenda staying with him in preparation for her to illegally enter the United States.  Patty stated

that she would be sending $2,500 to William for Brenda's illegal entry into the United States.

Patty then called co-defendant Israel Juarez Sifuentes ("Cerillo") and provided him with the details

of Brenda's trip so that he could pick her up in furtherance of her being smuggled into the United

States.  Cerillo also told Patty how to pay him for the transportation.  Patty then spoke to William

and informed him that she spoke to Cerillo so that he could transport Brenda.  They also discussed

how they would pay Cerillo.  On April 12, 2017, Cerillo told Patty that Brenda is arriving 15

minutes late in Miguel Aleman, which is a border city in Mexico.  Patty indicated that she would

be providing Cerillo with the remainder of the payment.  On April 14, 2017, Cerillo requested the

remainder of the payment for Brenda's crossing from Patty.  Later that day, Missy, who runs the

organization's main stash house and stash house activities in the Rio Grande Valley, told Patty that

she would pay the remainder.  Patty responded by telling Missy that she will let her know when

and where to pick up Brenda after she crosses.  Later, Missy informed Patty that Brenda just

entered the United States illegally with Cerillo's help.  Missy also stated that Brenda was at a

ranch, was to be transported to Missy's home, and then she would have Brenda transported to San

Antonio where she could be picked up by Patty.  However, Missy subsequently called Patty to

tell her that there was difficulty crossing the river, so they would try again later.   Then, on or about April 19, 2017, Missy informed Patty that Brenda crossed the river and that she should pick up Brenda in San Antonio, which is where she would be taken.   On or about May 1, 2017, Patty stated that co-defendant Erik Ivan Alvarez-Chavez ("Ivan") had just picked up Brenda from San Antonio and was bringing her to Houston.   Physical surveillance has established that Brenda later worked in a brothel controlled by Patty at the Carriage Way Apartment complex in Houston, Texas.

**C.**    **The July 17, 2017 Smuggling**

On July 17, 2017, Missy and Ivan discussed over a court authorized wire intercept the transportation of aliens from Missy's place of operation in the Rio Grande Valley to Ivan's place of operation in Houston.   Ivan and Missy then discussed the route they would take to pick up the smuggled aliens.   Ivan then spoke with co-defendant Jose Ruben Palomo-Martinez ("Palomo") about this transportation from Palomo's truck to Ivan's vehicle as well as future alien smuggling jobs.   Later that evening, Missy asked Ivan if Palomo is coming.   Ivan indicated he was and told her to tell him to meet at the Walmart.   Ivan then told Missy to meet Palomo at the Walmart. Ivan later called **Defendant**, who was harboring the aliens in her stash house along with separately indicted defendant Luis Veras-Figueroa ("Veras-Figueroa"), and told her to calm the woman, Aihui Lin, with pills.   **Defendant** stated that she did so.[2]   Ivan then spoke with an individual identified as Yang Xiuping and updated him about the transportation of the Chinese individuals, who were later determined to be Chuanping Chen and Aihui Lin.   Ivan later called **Defendant**

---

[2] Defendant admits that she made this statement.   However, she denies that she did, in fact, give any pills to Aihui Lin.   The United States is not contesting Defendant's claim.

and told her to look for the Gray Dodge Charger.   **Defendant** then transported the smuggled aliens to Missy.   Then, Missy called Ivan to let him know that the aliens were picked up.   Both **Defendant** and Missy told Ivan in phone calls that there were "problems" with the Chinese.

On the morning of ~~August~~ July 17, 2017, Palomo's tractor-trailer, which he operated and owned with his wife, was fully loaded up the trailer with watermelons at the Food Bank Rio Grande Valley.   The watermelons were destined for Tulsa, Oklahoma.   Witnesses at the food bank indicated that Palomo witnessed the entire loading of the tractor trailer and closed the door himself. It could not have been closed from the inside.   Palomo then drove approximately 15 minutes to a parking lot near Edinburg, Texas, where three aliens got into his trailer.   They were Chuanping Chen, Aihui Lin, and Wilvin Francisco.   The aliens could not have closed the door from the inside. There were also no markings on the truck as to where it was headed.   Court authorized wire intercepts also indicated that fake identification documents were waiting for the two Chinese individuals at the SWC controlled stash house in Houston.   Palomo then approached the Falfurrias checkpoint, at which point "Kaylie," a canine, alerted the presence of humans in the tractor trailer. An x-ray scan was then conducted and the three aliens were discovered in the back of the trailer right next to the door (they could not have been anywhere else in the trailer as it was full of watermelons).   They were not seatbelted and there was a substantial likelihood they could have been crushed by the watermelons.

The three aliens admitted to being in the United States illegally, to recently entering the United States illegally, and to paying between $14,000 and $40,000 to be smuggled into the United States and transported to their final destination in the northeastern portion of the United States.

**D.      The July 24, 2017 Smuggling**

On the evening of July 23, 2017, Edgar Ernesto Martinez-Hercules, Elbin Jonathan Bonilla-Fajardo, Angel Balmore Quijada-Flores, Vilma Aracely Rivera-Guevara, Jose Vidal Zelaya-Mejia, and Heladio Santiago-Bautista were picked up in a tractor-trailer from a mobile home near McAllen, Texas after having recently entered the United States illegally.  They were taken through the Falfurrias checkpoint and to a gas station near San Antonio where Denis Amaya-Caballero ("Denis") and Ivan were waiting in two separate cars.  Ivan was driving a grey Dodge Ram pickup and Denis was driving a black Chevrolet Trailblazer.  Denis and Ivan each transported three aliens.  When they reached Harris County, Harris County Sheriff Deputies first pulled over Denis for having a passenger not wearing a seatbelt.  All three aliens in his vehicle admitted to being in the country illegally and having paid approximately $7,000 to $10,000 each to be transported to Houston.  Then, after being read his *Miranda* rights, Denis admitted that he was transporting the aliens for profit.  He also admitted to acting in concert with the Ivan and the driver of the tractor trailer.  Specifically, Denis stated that Ivan offered to pay him $200 a person to transport the aliens.

Afterwards, Ivan was pulled over for an unsafe lane change and all of the aliens he was transporting admitted to be transported as illegal aliens to Houston and to paying between $7,000 and $10,000 to be smuggled to Houston.  Three of the aliens were prior deports and one was an unaccompanied juvenile.  Two of the aliens stated that they would not be allowed to leave the stash house they were supposed to go to in Houston until a further sum was paid.

Prior to the arrest, Patty discussed the matter with Ivan over a court authorized wire intercept and specifically discussed harboring the aliens once they arrived in Houston at the

13

Carriage Way apartments, including ordering food on their behalf.

**E.     The November 7, 2017 Smuggling**

On November 7, 2017 at 11:30 a.m., a traffic stop was conducted by the Hidalgo County Sheriff's Office and the Federal Bureau of Investigation of a silver Chevrolet Malibu with four occupants.   Veras-Figueroa was the driver and he initially identified himself as Javier Enrique Cepeda, provided a driver's license with that identity, and claimed he was a U.S. citizen by way of birth in Puerto Rico.   **Defendant** was one of the passengers and Veras-Figueroa stated that she was his common law spouse and they both resided at 2217 Mojave Street #2, Edinburg, Texas (hereinafter referred to as the "stash house").   **Defendant** was taken into custody pursuant to an outstanding arrest warrant.   Veras-Figueroa then admitted that the identity he provided was false and that he then provided his true name and admitted that he is an illegal alien from the Dominican Republic.   Veras-Figueroa then indicated there were four illegal aliens being harbored at his and **Defendant's** home and they granted law enforcement a written consent to search the residence and provided a key to the residence.

Another occupant in the car was found to be Guillermo Esteban Margarin-Saldana, who was an illegal alien from the Dominican Republic and who admitted to being transported by the **Defendant** and Veras-Figueroa after having just crossed the border illegally.

Law enforcement then searched the stash house at approximately 2:30 p.m. Eleven illegal aliens were discovered inside the residence.   All 12 individuals (the 11 illegal aliens in the house and the one illegal alien in the car) were interviewed by Border Patrol Agents (BPA).

One interview was of Stalin Manuel Garcia-Polanco, A200-595-911, who waived his *Miranda* rights and admitted he was from the Dominican Republic, and illegally entered the United

14

States on or about November 2, 2017 by crossing the Rio Grande River.   Garcia-Polanco further stated that he was previously deported on May 5, 2010, and again on July 29, 2014, from New Orleans, Louisiana.   Garcia-Polanco further stated that he paid $1,800 to be smuggled into the United States.   Garcia-Polanco further stated that after crossing the Rio Grande River on or about November 2, 2017, and being transported to a different location, he later made arrangements with Veras-Figueroa to further smuggle him in the United States and that, as a result of those arrangements, Veras-Figueroa transported him within the United States to the stash house. Garcia-Polanco further stated that he was harbored, concealed and shielded from detection with 11 other illegal aliens by **Defendant** and Veras-Figueroa at the stash house.   Upon his arrival to this location, Garcia-Polanco indicated that Veras-Figueroa ordered him to enter the stash house and told him to stay inside.

Garcia-Polanco positively identified Veras-Figueroa out of a six-photograph array as the individual who transported him to the stash house, ordered him to stay inside of the stash house, and maintained the stash house.   Garcia-Polanco positively identified **Defendant** out of a six-photograph array as the other individual who maintained and managed the stash house.

Another interview conducted was that of Fabiana Roberta De Silva.   After waiving her *Miranda* rights, she admitted that she left Brazil on or about September 1, 2017, and illegally entered the United States with three other illegal aliens on or about October 3, 2017 by crossing the Rio Grande River.   Da Silva further stated that she was to pay $20,000 to be smuggled into the United States (specifically New Jersey), had already paid $1,000 of that total, and was to pay the remainder when she arrived at her final destination in New Jersey.   Da Silva further stated that she was taken to several homes during the first fifteen days after her illegal entry into the United

States.  Eventually, she was transported to the stash house.  Da Silva further stated that she was harbored, concealed and shielded from detection with 11 other illegal aliens by **Defendant** and Veras-Figueroa Salas at the stash house.

Da Silva positively identified **Defendant** and Veras-Figueroa out of separate six-photograph arrays as the individuals who maintained the stash house.

The other nine illegal aliens apprehended at the location were natives and citizens of Brazil.

Garcia-Polanco and Da Silva also stated that they were harbored, concealed and shielded from detection by **Defendant** and Veras-Figueroa at the stash house as part of their payments to be smuggled into or within the United States and that they were instructed to not be too loud and not leave the apartment.

**Defendant** and Veras-Figueroa indicated that they were hired to transport, harbor, conceal and shield from detection the undocumented aliens in furtherance of their illegal entry into the United States.  Both **Defendant** and Veras-Figueroa admitted that they knew the aliens did not have documents and were illegally in the United States.

### Breach of Plea Agreement

16.  If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand.  If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.  Any information

and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

17.   This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that she will make a full and complete disclosure of all assets over which she exercises direct or indirect control, or in which she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which she has an interest, unless Defendant obtains the prior written permission of the United States.

18.   Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement.   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information.   Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19.   Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.   Defendant also agrees to direct any banks which have custody of her assets to deliver all funds and records of such assets to the United States.

20.   Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

21.   Defendant agrees to pay full restitution to any victims regardless of the count of conviction.   Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate any victims.   Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

22.   Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.   In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture:   One (1) 2009 Silver Chevrolet Malibu with Texas License Plate Number CNL-2382, VIN 1G1ZH57BX9F228692; one (1) 2006 white trailer with VIN 1GRAA06216W705993, Texas license plate 084B686; and one (1) 2006 blue Peterbilt Motors Co. tractor with VIN 1XPFDB9X26N642109, Texas license plate R202004.

23.   Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

24.   Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

25.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

26.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any.   Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

27.   This written plea agreement, consisting of 20 pages, including the attached addendum of Defendant and her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against her and that she is pleading guilty freely and voluntarily because she is guilty.

28.   Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _____, Texas, on _____, 20___

                                     _____
                                     Grisel Salas
                                     Defendant

Subscribed and sworn to before me on _____, 20___

                                     DAVID J. BRADLEY, Clerk
                                     UNITED STATES DISTRICT CLERK

By: _____
                                     Deputy United States District Clerk

APPROVED:

    Ryan K. Patrick
    United States Attorney

By:      _____           _____
    Adam Laurence Goldman                   Mary Elizabeth Conn
    Assistant United States Attorney          Attorney for Defendant
    Southern District of Texas
    Telephone:  713-567-9534
    Facsimile:  713-718-3303

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO.   H-4:17-cr-00651-9 |
| | § | |
| GRISEL SALAS, a/k/a "CRIS," | § | |
| | § | |
| Defendant. | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____         _____ Date   12/13/18 _____

Mary Elizabeth Conn
Attorney for Defendant


I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My atctorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement

21

with my attorney.   I understand this agreement and I voluntarily agree to its terms.


Grisel Salas                                    12-13-18
Defendant                                       Date